UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DENNIS PERRIN,

    Plaintiff,

v.                                                                                                         Civ. No. 16-721 GJF

NANCY BERRYHILL, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff Dennis Perrin's ("Plaintiff's") "Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum" ("Motion"), filed on February 13, 2017. ECF No. 18. The Commissioner responded on April 14, 2017. ECF No. 20. Plaintiff filed his Reply on May 5, 2017. ECF No. 23. Having meticulously reviewed the entire record and the parties' briefing, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

**I.  BACKGROUND**

Plaintiff filed an application for supplemental security income on January 6, 2009, alleging disability that started on June 1, 2001. AR 359. Plaintiff's application was denied on April 29, 2009, and again on reconsideration on July 8, 2010. AR 359. Plaintiff had a hearing on May 30, 2012 before ALJ Ann Farris, and on June 7, 2012, ALJ Farris issued her opinion concluding that Plaintiff was not disabled. AR 413. Plaintiff then applied for review by the Appeals Council and submitted additional evidence that was not available at the time of the hearing, but the Appeals Council denied the request for review. AR 413. Plaintiff then appealed

1

to this Court, which concluded that the Appeals Council should have considered Plaintiff's additional evidence, and remanded for an additional hearing. AR 427, 430. The Appeals Council then vacated ALJ Farris's opinion, and Plaintiff had another hearing on January 19, 2016, in front of ALJ D'Lisa Simmons. AR 359, 371. During that hearing, Plaintiff and vocational expert Mary D. Weber testified. AR 359. On March 1, 2016, ALJ Simmons issued her opinion concluding that Plaintiff was not disabled. AR 370. There is no indication in the record that Plaintiff filed a request for review by the Appeals Council following ALJ Simmons' unfavorable decision, which made ALJ Simmons's decision the final decision of the Commissioner following remand. *See* 20 C.F.R. § 404.984(a), (d) (2010); Pl.'s Mot. 5, ECF No. 18. Plaintiff then timely filed his appeal in this Court on June 27, 2017. ECF No. 1.

## II.   PLAINTIFF'S CLAIM

Plaintiff's sole argument on appeal is that ALJ Simmons failed to provide adequate reasons for rejecting Dr. John Vigil's opinion regarding Plaintiff's "work-like capabilities." *See* Pl.'s Mot. 23-27; AR 367. Plaintiff asserts that ALJ Simmons did not provide "any analysis, legal or evidentiary basis to support her contention" that Dr. Vigil relied on Plaintiff's subjective report of symptoms and limitations. Pl.'s Mot. 24; *see* AR 367. Plaintiff further argues that ALJ Simmons did not provide adequate explanation for why Dr. Vigil's opinion regarding Plaintiff's work-like capabilities is "vague, unsupported, and inconsistent with the medical record as a whole." AR 367; *see* Pl.'s Mot. 25. Although Plaintiff's diabetes and obstructive sleep apnea improved in 2014 and 2015, Plaintiff argues that ALJ Simmons did not explain how Dr. Vigil's opinion was inconsistent with the record between 2009 and 2013. *See* Pl.'s Mot. 25. Plaintiff also argues that his diabetic peripheral neuropathy was not controlled in 2014 and 2015, that his neuropathy causes pain and loss of sensation, that ALJ Simmons "misapprehends the nature of

diabetic peripheral neuropathy," and "overstep[ped] her bounds into the province of medicine." Pl.'s Mot. 26-27.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

**B. Sequential Evaluation Process**

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then

the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his or her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 6, 2009. AR 361. At step two, the ALJ found that Plaintiff had the following severe impairments: morbid obesity, diabetes mellitus with peripheral neuropathy, personality disorder, anxiety, depression, and an unspecified learning disorder. AR 361. The ALJ also found that Plaintiff was diagnosed with the following non-severe health conditions, which she considered in determining Plaintiff's RFC: obstructive sleep apnea, Guillain-Barre syndrome, narcolepsy[2], vision loss, and recent foot surgery. AR 362. In so finding, the ALJ noted that "[Plaintiff] did not allege any symptoms or functional limitations as a result of these impairments, nor did the record show[ ] any examination findings which would support any functional limitations." AR 362. The ALJ noted that Plaintiff's obstructive sleep apnea was much improved, according to the record, with use of a Continuous Positive Airway Pressure ("CPAP") machine. AR 362. The ALJ also considered Plaintiff's foot surgery, noting that "there was no indication [Plaintiff]'s foot surgery would restrict [Plaintiff] for 12 consecutive

---

[2] The record actually shows that Plaintiff was never diagnosed with narcolepsy. AR 573-587. As the ALJ considered narcolepsy in determining Plaintiff's RFC, essentially this amounts to harmless error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (quoting *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993)) (concluding error is harmless when it is "minor enough not to undermine confidence in the determination of th[e] case").

5

months or that he would not have a full recovery as required for a health condition to be considered a severe impairment." AR 362. The ALJ continued, stating that even though she determined these health conditions to be non-severe, "the limiting effects of all [Plaintiff's] impairments, even those that were not severe, were considered in determining [Plaintiff's] residual functional capacity assessed below." AR 362. Also at step two, the ALJ discussed Plaintiff's alleged degenerative joint disease, which she deemed to be non-medically determinable because "[Plaintiff] failed to submit medical evidence supporting his allegation[.]" AR 362-63.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 363. In doing so, the ALJ "gave particular consideration to the obesity and diabetes listings," but found that "the medical evidence did not document listing-level severity." AR 363.

At step four, the ALJ determined Plaintiff's RFC as the following:

I found [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except he could lift, carry, push, and pull 10 pounds, frequently and less than 10 pounds, occasionally; he could sit 6 hours in an 8-hour workday; he could stand and/or walk 2 hours in an 8-hour workday; he could frequently perform handling and fingering; he could never crouch, crawl, or kneel, he could occasionally climb ramps and stairs; he could never climb ropes, ladders, and scaffolding; he could never work around dangerous machinery or unprotected heights. Due to moderate limitations in social functioning and concentration, persistence, or pace, [Plaintiff] was limited to performing simple, routine, repetitious work with one, two, or three step instructions in a supervised environment requiring few decisions. Further [Plaintiff] was limited to only occasional interaction with the public, co–workers, and supervisors.

AR 365. In doing so, the ALJ evaluated Plaintiff's credibility and reviewed medical evidence in the record. AR 365. In relevant part[3], the ALJ considered the opinions of two consulting examining physicians, Dr. Amy Kogut and Dr. John Vigil; progress notes from First Choice Community Healthcare; treatment records from Foot and Ankle Specialists of New Mexico; Plaintiff's testimony; and Plaintiff's work history. AR 362, 367-369. The ALJ also considered the opinions of two non-examining consulting physicians who provided opinions at the request of State Disability Determination Services. AR 369.

*Dr. Amy Kogut, M.D.*

Dr. Amy Kogut conducted a consultative physical examination of Plaintiff on March 28, 2009. AR 366. Plaintiff told Dr. Kogut that he had sleep apnea, diabetes, and Guillain-Barre syndrome. AR 366. Dr. Kogut observed that Plaintiff walked very slowly with moderate difficulty and an antalgic gait, but that he did not use an assistive device. AR 255, 366. Ultimately, Dr. Kogut's impressions, which were not for diagnostic purposes, were that Plaintiff "has very inadequate blood sugar control and he does have moderate limitation due to the inadequacy of diabetes control." AR 254, 256. Dr. Kogut also observed that Plaintiff had sleep apnea, opining that the condition was "an ongoing problem," but that there did not "seem to be any limitation of function on this basis." AR 256. Dr. Kogut reflected with respect to Plaintiff's Guillain-Barre syndrome that "it is unclear as to the extent of his weakness since age 3 or whether this is progressive." AR 256. Lastly, Dr. Kogut observed that Plaintiff was obese, and that "[t]his [was] a primary problem for this patient and many of his other medical problems are due to this [one] problem." AR 256. Dr. Kogut did not make any other findings regarding

---

[3] Plaintiff does not challenge the ALJ's findings with respect to his mental health, particularly the ALJ's evaluation of the opinions of Dr. Louis Wynne, Ph.D., and Dr. Clifford Morgan, Ph.D., who conducted consultative psychological evaluations of Plaintiff. AR 367-368. I therefore do not discuss the ALJ's findings regarding these opinions and Plaintiff's alleged depression and anxiety. *See Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) ("The scope of our review, however, is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal[.]").

Plaintiff's functional capacities. The ALJ gave significant weight to Dr. Kogut's clinical evaluation because it was based on her personal examination of Plaintiff and "consistent with the medical evidence as a whole." AR 367.

*Dr. John Vigil, M.D.*

Dr. John Vigil conducted a consultative physical examination of Plaintiff on June 6, 2012. AR 333. The examination took thirty minutes, and Dr. Vigil reviewed Plaintiff's medical records for one hour. AR 333. Dr. Vigil wrote that Plaintiff had multiple medical problems including chronic pain, obstructive sleep apnea, poorly controlled diabetes complicated by neuropathy, morbid obesity, and anxiety and depression. AR 333. Dr. Vigil reviewed a psychological evaluation by Mark Simpson, Psy.D.; medical records from First Choice Community Healthcare; Dr. Kogut's report; and Plaintiff's Self-Functional Report. AR 334. Dr. Vigil observed that "[t]he quality of [Plaintiff's] history is poor." AR 334. Nonetheless, and perhaps paradoxically, Dr. Vigil also observed that Plaintiff "presents as a credible and reliable historian." AR 334.

Dr. Vigil stated that Plaintiff had been diagnosed with painful neuropathy, and also noted that Plaintiff "has been a fairly noncompliant patient who has had trouble controlling his diabetes." AR 334. Plaintiff told Dr. Vigil that he sometimes forgets to take his medication, and that his mother has to remind him to take it and sometimes even gives him his insulin injections. AR 334. Plaintiff complained of "chronic burning pain in his extremities, including his hands and feet[,] which is constant and daily." AR 334. Plaintiff stated that he had been treated with pain medication and Neurontin for the pain associated with his neuropathy but that the medications did not help. AR 334. Plaintiff also stated that he did not take Neurontin because it worsened his fatigue. AR 335. Plaintiff rated his average pain as six to seven out of ten, with

ten being the most severe. AR 334. Plaintiff indicated that the pain is most severe in his hands and feet, and that he also has aching pain in his hips and knees that is worse with activity and prolonged standing. AR 334.

Plaintiff told Dr. Vigil that he had obstructive sleep apnea, and admitted that he was not very compliant with using the CPAP machine. AR 334. Because of his sleep apnea, Plaintiff stated that he does not sleep very well and is constantly fatigued, which prevents him from holding a job. AR 334. Plaintiff told Dr. Vigil that he cannot walk more than fifteen to twenty feet without becoming short of breath. AR 334.

Regarding Plaintiff's activities of daily living, Plaintiff told Dr. Vigil that he had difficulty bathing, dressing, and grooming himself, and that his mother assists him with all of these activities. AR 335. Plaintiff told Dr. Vigil that he was unable to do any housework or yard work, and is unable to enjoy avocational activities secondary to his pain. AR 335. Plaintiff scored 137 out of 150 on the Pain Disability Questionnaire that Dr. Vigil administered, which according to Dr. Vigil "indicat[ed] a severe problem with chronic pain." AR 335. Dr. Vigil also administered the Quick Disabilities of the Arm, Shoulder, and Hand ("DASH") questionnaire on which Plaintiff scored eighty-six out of one hundred, indicating "a very severe problem with activities of daily living." AR 335. In general, Plaintiff complained of lack of energy and extreme fatigue. AR 335.

Dr. Vigil observed that Plaintiff "exhibit[ed] moderate and appropriate pain behavior during the examination. He provides good and consistent effort and I do not suspect symptom magnification or malingering behavior." AR 336. Dr. Vigil again noted that Plaintiff was a "poor historian and has difficulty with concentration and memory." AR 336. Dr. Vigil observed

that Plaintiff appeared to be "uncomfortable during the examination," and that his gait was unsteady and antalgic. AR 336.

In the assessments portion of his report, Dr. Vigil found that Plaintiff had the following conditions: (1) chronic pain; (2) diabetes mellitus, poorly controlled with neuropathy; (3) obstructive sleep apnea with hypersomnia; (4) morbid obesity; (5) hypertension, poorly controlled; (6) moderately severe depression/anxiety, untreated; (7) probable DJD[4] of the hips and knees secondary to morbid obesity; and (8) probable social anxiety disorder, untreated. AR 337. In Dr. Vigil's opinion, Plaintiff was "totally and completely disabled secondary to his chronic pain and other severe co-morbid medical and psychiatric conditions which are untreated." AR 337. Dr. Vigil further opined that Plaintiff's "medical conditions in combination preclude him from engaging in any type of significant vocational activity." AR 337. As the sole support for this disability finding, Dr. Vigil stated, "Medical records and my evaluation indicate that [Plaintiff] had significant and substantial pain with even minimal activity as well as at rest and that he has significant problems with most aspects of activities of daily living." AR 337.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Vigil concluded that Plaintiff could stand or walk with normal breaks for a total of less than two hours in an eight hour workday, and that severe chronic pain was the medical finding that supported that opinion. AR 339. Dr. Vigil also concluded that Plaintiff could sit with normal breaks for a total of less than four hours in an eight hour workday, and that severe chronic pain was the medical finding that supported that opinion. AR 339.

The ALJ assigned little weight to Dr. Vigil's physical functional assessment and reasoned as follows:

---

[4] Dr. Vigil wrote "DJD" in his report. AR 337. Based on the ALJ's reference to degenerative joint disease, it is possible that "DJD" means degenerative joint disease, but Dr. Vigil did not specify. *Id.*

> Dr. Vigil apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported. Yet, as explained elsewhere in this decision, there existed good reasons for questioning the reliability of [Plaintiff]'s subjective complaints. In addition, treatment records did not detail clinical support for the opinion that [Plaintiff] was disabled. Therefore, I gave significant weight to Dr. Vigil's clinical findings, but little weight to his opinion regarding [Plaintiff]'s work-like capabilities because it is vague, unsupported, and inconsistent with the medical record as a whole. Moreover, subsequent treatment notes document few symptoms that would result in severe functional restrictions or limitations.

AR 367. The ALJ observed that as of February 2009, Plaintiff reported that he had been off his medications for one year, despite having been diagnosed with diabetes nine years earlier, "which was not what one would expect for a totally disabled individual." AR 366. The ALJ also noted that in May 2010, Plaintiff stated that he had not been taking his diabetes medication, and in October 2010 and October 2011, Plaintiff was again out of medications. AR 367. The ALJ found that "[Plaintiff]'s non-compliance with his recommended medication regimen did not enhance his overall credibility before this tribunal." AR 367.

*Plaintiff's testimony*

The ALJ noted in her decision that Plaintiff testified during the hearing that he had difficulty concentrating and needed reminders to take his medications. AR 368. Plaintiff also testified that he needed a cane to walk, that he could only lift five pounds, that he could only sit for five to ten minutes at a time, he could only stand for five minutes at a time, and that he could walk one-half of a city block. AR 368, 385-86. Plaintiff acknowledged that he had used the cane for only five months prior to the hearing. AR 385. And although the ALJ recalled Plaintiff testifying that the cane was not prescribed by a physician, AR 368, Plaintiff did testify that his podiatrist recommended that he use the cane. AR 385.

11

Regarding activities of daily living, Plaintiff testified that his mother did all the cooking and cleaning because he gets "winded easily" and "it really begins to hurt after a while." AR 387. When counsel asked Plaintiff whether he gets winded from a medical problem, Plaintiff testified, "[p]robably weight." AR 387. Later during the hearing, Plaintiff told the ALJ that he sometimes prepares meals if they are simple, but does not wash dishes or load them in the dishwasher. AR 395. Plaintiff testified that he goes shopping, but when he does he "ride[s] around in one of the little shopping carts." AR 395. When Plaintiff is at home, which Plaintiff testified is one hundred percent of the time, he either watches television or sits in a chair and thinks. AR 388. Plaintiff testified that he does laundry every two weeks, and that he and his mother have to go to the laundromat. AR 398. Plaintiff also makes his bed and sweeps or vacuums the floors about every two weeks. AR 398. Plaintiff does not mop, but cleans his own bathroom about once a month. AR 398. Plaintiff testified that shaving and brushing his teeth make his arms hurt. AR 399. Plaintiff also does not take out the trash. AR 400.

Regarding current compliance with treatment, Plaintiff testified that he still uses his CPAP machine, and that he's "become a lot more regular" about taking his medication because he uses a pillbox, which helps him remember to take his medication. AR 401.

Plaintiff's counsel asked him what problem he would have in doing his dream job, if he could obtain such a job. AR 404. Plaintiff responded, "I have a hard time concentrating on what I'm doing . . . I have a hard time maintaining what I'm working on." AR 404-05. He explained that he loses focus on understanding what he is trying to do, and has a problem with staying awake. AR 405.

The ALJ questioned Plaintiff about his foot surgery. AR 391. Plaintiff testified that his foot cast would be removed several days after the hearing, and that if his foot was healed

enough, he would wear a boot. AR 391. Plaintiff did not testify that he expected to not be able to walk for any extended period of time.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 369. Accordingly, the ALJ proceeded to step five. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 369. These jobs, as described by the vocational expert, Mary Weber, included table worker, Dictionary of Occupational Titles ("DOT")[5] #739.687-182; stone setter, DOT #735.687-034; and nut sorter, DOT #521.687-086. AR 370. Ms. Weber also testified that if Plaintiff could stand or walk less than two hours in eight hours and sit for less than four hours in eight hours, those limitations would rule out these jobs. AR 408. Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, since January 6, 2009, and denied the claim. AR 370-71.

V. ANALYSIS

A. The ALJ Properly Evaluated Dr. Vigil's Opinion

Plaintiff maintains in his Motion that the ALJ entirely rejected Dr. Vigil's opinion, but her decision reflects a different evaluation. The ALJ assigned significant weight to Dr. Vigil's clinical findings, but gave little weight to his opinion regarding Plaintiff's "work-like capabilities because it is vague, unsupported, and inconsistent with the medical record as a whole." AR 367. The sole issue raised on appeal is whether the ALJ adequately supported with substantial evidence her decision to give little weight to Dr. Vigil's opinion regarding Plaintiff's functional limitations and disability. *See* Pl.'s Mot. 23-27.

---

[5] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2017). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2017).

20 C.F.R. § 416.927(c) sets forth factors for how an ALJ should evaluate medical opinions. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). To determine the weight given to a medical opinion, the ALJ utilizes the following factors: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention or of which the ALJ is aware. 20 C.F.R. § 416.927(c). Whether a claimant is disabled or unable to work is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d). Dr. Vigil was a consultative examiner who examined Plaintiff a single time for 30 minutes. AR 333-334.

Plaintiff argues that the ALJ may not reject an opinion solely due to his or her own credibility judgments, speculation, or lay opinion, citing to *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).[6] Pl.'s Mot. 24. First, *McGoffin* concerned an ALJ's rejection of a *treating* physician's assessment because of the ALJ's own credibility judgments, speculation, or lay opinion, and is thus distinguishable from this case because Dr. Vigil was only a consultative examiner. *See* 288 F.3d at 1252. Second, as *McGoffin* points out, the ALJ "is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Id.* (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). In this case, Dr. Vigil was not a treating physician, nor does Plaintiff claim he was. In evaluating the medical opinion of a consultative examiner such as Dr. Vigil, 20 C.F.R. § 416.927(c) instructs that the ALJ may take into account supportability

---

[6] The Court notes that Plaintiff provided the incorrect citation for *McGoffin v. Barnhart*, citing to 122 F.3d 1248, 1252 (10th Cir. 2002), rather than 288 F.3d 1248 (10th Cir. 2002). Pl.'s Mot. 24. The Court assumes in its analysis that Plaintiff intended to cite to 288 F.3d 1248.

14

and consistency, both of which the ALJ considered here in assigning weight to Dr. Vigil's opinion. AR 367.

First, the ALJ's determination that Dr. Vigil's opinion concerning Plaintiff's work-like capabilities was unsupported is corroborated by substantial evidence. The ALJ discussed that Dr. Vigil based his opinion on Plaintiff's subjective complaints of pain. AR 367. The ALJ did not view Plaintiff to be credible because of his lack of compliance with his prescribed treatment, which the ALJ supported with specific references to the record. AR 366-67. Tellingly, Plaintiff does not challenge the ALJ's finding that Plaintiff was not credible. Plaintiff asks only whether such a finding – that Plaintiff was not credible – is sufficient to support the ALJ's evaluation of Dr. Vigil's opinion regarding Plaintiff's work-like capabilities. Pl.'s Mot. 24.

Plaintiff ignores that the ALJ cited reasons other than Plaintiff's lack of credibility for assigning little weight to one portion of Dr. Vigil's opinion. The ALJ wrote that "treatment records did not detail clinical support for the opinion that [Plaintiff] was disabled." AR 367. In response, Plaintiff argues that "the medical record contains numerous references to complaints of pain between 2009 and 2012." Pl.'s Mot. 25. There are references in disability reports completed by Plaintiff to constant pain [AR 192, 208], Plaintiff not being able to sleep because of pain and difficulty breathing [AR 171], his feet hurting [AR 175-76], and to ulcers on his hands, legs, and feet from neuropathy. AR 208. There are also progress notes from First Choice Community Healthcare between 2009 and 2012 referencing constant pain in Plaintiff's legs and head and numbness in his hands [AR 280], chronic pain in Plaintiff's hips, legs, knees, and back [AR 325], and intermittent nerve pain in his feet, arms, and back. AR 321. A consultative psychiatric examiner, Dr. Simpson, also noted that Plaintiff told him that his feet hurt, he was in pain, and Dr. Simpson noted a chronic pain condition. AR 224-25. Additionally, Plaintiff told

15

Dr. Kogut in March 2009 that he had persistent foot pains and burning, and Dr. Kogut observed that Plaintiff had an antalgic gait. AR 254-55.

However, records between 2009 and 2012 do not discuss how Plaintiff's pain impacted his ability to sit, stand, walk, or generally work. The only source of information regarding Plaintiff's chronic pain is Plaintiff himself. During the hearing, Plaintiff did not testify that chronic pain would prevent him from doing his dream job if he could get it. *See* AR 404. Plaintiff testified that his problems with concentration and staying awake would prevent him from doing his dream job. AR 404-405. Although Dr. Kogut and Dr. Vigil observed Plaintiff to have an antalgic gait [AR 254, 336], that alone does not constitute clinical support that Plaintiff suffered from chronic pain, much less that he was disabled because of it. Dr. Vigil wrote only "chronic severe pain" for the medical findings supporting his opinion. AR 339. Furthermore, Plaintiff's mere references to complaints of pain do not constitute sufficient evidence to establish disability. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) ("A claimant's subjective allegation of pain is not sufficient in itself to establish disability."). The only medical source to conclude that Plaintiff was so functionally limited because of chronic pain that he could not work was Dr. Vigil, and Dr. Vigil's source of information regarding that pain was Plaintiff. AR 333-40. *See also* AR 254-256 (Dr. Kogut's report), AR 308-15 (Dr. Brady's physical RFC assessment), and AR 258-65 (L. Holly's physical RFC assessment).

Second, the ALJ's determination that Dr. Vigil's functional assessment was inconsistent with the record is supported by substantial evidence. A non-examining consultative physician, Dr. Eileen Brady, and a non-examining consultant, L. Holly[7], rendered functional assessments for Plaintiff. Dr. Brady concluded that Plaintiff could stand or walk for at least two hours in an

---

[7] It is unclear from the record whether L. Holly is a physician as she did not sign her report with M.D., D.O., or another signifier of her occupation. AR 265.

eight hour day and that he could sit for about six hours in an eight hour day. AR 309. L. Holly concluded that Plaintiff could stand or walk and sit about six hours in an eight hour day. AR 259. The ALJ assigned "some weight" to these functional assessments. AR 369. Both of these functional assessments are inconsistent with Dr. Vigil's assessment that Plaintiff could only stand or walk for less than two hours in an eight hour day and could only sit for less than four hours in an eight hour day. AR 339. Furthermore, Plaintiff's own testimony contradicts Dr. Vigil's extremely restrictive functional assessment, as Plaintiff testified that he mostly sits during the day. AR 388.

Dr. Vigil's examination revealed only that Plaintiff was not malingering, appeared uncomfortable during the examination, had decreased sensation to light touch, had moderate tenderness of the hips and the knees without swelling or effusions, and had normal range of motion with pain of these joints and pain with weight bearing. AR 335-36. Dr. Vigil also described Plaintiff's gait as unsteady and antalgic, stated that Plaintiff could not walk on his toes or heels, and was unable to squat or hop. AR 336. Based on these findings, Dr. Vigil submitted a restrictive functional assessment that Plaintiff could stand or walk for less than two hours in an eight hour day and could sit for less than four hours in an eight hour day. AR 339. Dr. Vigil did not discuss how he determined Plaintiff's restrictive functional assessment based on the information Dr. Vigil had before him following a 30 minute examination and his review of Plaintiff's medical records. The ALJ was permitted to discount Dr. Vigil's opinion because it was inconsistent with both his exam findings and the evidence in the record. *See Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (affirming ALJ's rejection of consulting physician's opinion that claimant's migraines were disabling because "he did not have a treating

relationship with [the claimant], he based his opinion on a single, subjective report given to him by [the claimant], and his opinion was not supported by the evidence of record.").

Plaintiff's second argument, that the ALJ misapprehended the nature of diabetic peripheral neuropathy, amounts to a request that this Court reweigh the evidence presented to the ALJ, which the Court declines to do. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)) ("[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's."). In his Motion, Plaintiff essentially summarizes records from his podiatrist and relies on unadmitted evidence describing in general terms peripheral neuropathy. The ALJ considered the records from the podiatrist in finding that Plaintiff's foot surgery was a non-severe impairment. AR 362. The ALJ did, however, find that Plaintiff's diabetes mellitus with peripheral neuropathy was a severe impairment. AR 361.

To date, however, Plaintiff has adduced no evidence to support a finding of disability based on peripheral neuropathy. Indeed, despite having the opportunity to do so, Plaintiff's counsel neglected to ask any questions about the impact of the peripheral neuropathy on Plaintiff during the hearing. And, although the ALJ solicited testimony from Plaintiff about his foot surgery, Plaintiff testified only that he expected to have his cast removed and that he did not expect to go to physical therapy. AR 391. Plaintiff testified that he does not contribute to household chores not because of his peripheral neuropathy, but because he gets "winded easily" and "tired." AR 387. When asked why he could not work, Plaintiff similarly stated, "I'm always having a hard time concentrating on what I'm doing. I'm always falling asleep. I'm depressed. I hurt." AR 390. Plaintiff never testified how his pain impacted his ability to work, and did not specifically refer to his neuropathy. The Court finds therefore that the ALJ's

evaluation of Dr. Vigil's opinion is supported by substantial evidence, and Plaintiff's argument that this Court should reweigh the evidence concerning his peripheral neuropathy does not change that determination.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum [ECF No. 18] **IS HEREBY DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **HEREBY AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*